IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LEVI STRAUSS & CO.,

        Plaintiff,

  v.

ESPRIT US DISTRIBUTION, LTD. et al.,

        Defendants.

No. C 07-910 SI

**ORDER DENYING DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT**

    Defendant Esprit US Distribution, Ltd. has filed a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). The motion is currently scheduled for hearing on April 4, 2008. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument, and hereby VACATES the hearing. Having considered the papers submitted, the Court hereby DENIES defendant's request.

## STATEMENT OF FACTS[1]

    In November 2004, plaintiff Levi Strauss and Company ("LS&CO.") and defendants Esprit US Distribution, Ltd., Esprit International, Esprit Wholesale GmbH, Esprit De Corp. France S.A., Esprit Belgie Wholesale N.V., and Esprit Belgie Retail N.V. (collectively "Esprit"), entered into a worldwide settlement agreement which resolved a dispute concerning defendants' use of a number of "pocket labels and/or stitching designs . . . that LS&CO. alleges violate its rights in the Tab and Arcuate Trademarks."

---

[1] Unless otherwise noted, the facts have been taken from plaintiff's amended complaint and opposition. Defendant Esprit US has not disputed any of these facts for present purposes.

Compl. Ex. D at 2. By its terms, the scope of the settlement agreement "is worldwide and shall bind and inure to the benefit of the parties, their affiliates, subsidiaries, assignees, licensees, successors, officers, directors, and employees." *Id*. at 3. The settlement agreement contains copies of the Tab and Arcuate Trademarks and registration of these trademarks in various jurisdictions. *Id*. In the settlement agreement, defendants represented and warranted the following:

> [N]o later than August 1, 2004, they will permanently discontinue importing, manufacturing, having manufactured, distributing, advertising, promoting, displaying, offering for sale or selling bottoms (including without limitation jeans, pants, shorts and skirts) that display any of the stitching designs in the form and placement illustrated in [various exhibits], and/or any of the tabs in the form and placement illustrated in [various exhibits].

*Id*. Attached to the agreement are exhibits with photographs of the specific Esprit stitching and tab designs at issue. Defendants also agreed to the following:

> [T]hey will not thereafter manufacture, have manufactured, import, distribute, advertise, promote, offer for sale, sell or display, anywhere in the world:
> a.  Bottoms that display any stitching design in the form and placement illustrated in [various exhibits], or any *de minimus* variation thereof; and/or
> b.  Bottoms that display any tab in the form and placement illustrated in [various exhibits], or any *de minimus* variation thereof . . . .

*Id*. at 4. This portion of the agreement referred to the same attached exhibits with photographs of the specific Esprit stitching and tab designs at issue.

The settlement agreement also provides for a procedure by which defendants can submit proposed designs to plaintiff for prior approval, and "[i]f LS&CO. indicates that it does not object to use of the design, then the future use of such design by [defendants] shall not be deemed to violate any provision of [the] Agreement and [plaintiff] shall not challenge such use by [defendants] in any forum." *Id*. at 5-6. The settlement agreement contains exhibits of Esprit designs to which plaintiff did not object and which plaintiff agreed not to oppose or otherwise challenge. *Id*. at 6. The settlement agreement includes a notice provision requiring plaintiff to give notice to defendants with 90 days to cure before

2

1 commencing any legal action or proceeding, if it believes defendants are in violation of the agreement
2 or of plaintiff's rights in the Arcuate trademark. *Id*. at 6. The settlement agreement was signed by all
3 of the defendants in this action, plus an Esprit entity located in Canada. *Id.* at 11-12.

4 In August 2006, plaintiff discovered in France an Esprit stitching design that is allegedly
5 prohibited by the settlement agreement. On September 14, 2006, and again on October 20, 2006,
6 plaintiff notified defendants of this alleged violation, and defendants did not respond. In February 2007,
7 plaintiff filed this action for infringement of its mark and breach of the settlement agreement. In
8 November 2007, plaintiff's counsel reviewed defendants' websites and discovered additional designs
9 that allegedly "violate the 2004 agreement, infringe [plaintiff's] rights in its Arcuate trademark, or
10 both." Pl.'s Opp'n at 1. On February 8, 2008, plaintiff filed its First Amended Complaint. On February
11 28, 2008, defendant Esprit US Distribution, Ltd. ("Esprit US") filed the instant motion for a more
12 definite statement on behalf of itself only.

## DISCUSSION

15 Defendant Esprit US contends that plaintiff failed to satisfy the notice requirement of Federal
16 Rule of Civil Procedure 8(a) because its allegations regarding defendants' alleged trademark
17 infringement are vague and ambiguous. Plaintiff argues that it has specifically identified the trademark
18 allegedly being infringed as well as the allegedly infringing products at issue and has fully met its
19 burden of notice pleading under the Federal Rules.

20 Although Rule 8(a) requires only a short and plain statement of the relevant facts, the plaintiff
21 must set forth the theory of the case "with enough detail to guide discovery." *McHenry v. Renne*, 84
22 F.3d 1172, 1177 (9th Cir. 1996). Federal Rule of Civil Procedure 12(e) addresses the unfair burden that

3

complex or confusing complaints impose on litigants and judges.[2] *See McHenry*, 84 F.3d at 1179 (more definite statement warranted when complaint failed to indicate which wrongs were committed by which defendants). A defendant may move for a more definite statement pursuant to Rule 12(e), "but only when a pleading 'is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading.'" *CMAX, Inc. v. Hall*, 290 F.2d 736, 738 (9th Cir. 1961) (quoting Fed. R. Civ. P. 12(e)). Furthermore, Rule 12(e) is not intended to be a substitute for discovery. *See id.* (finding the materials "sought to be produced were evidentiary in character and not necessary or appropriate for pleading under the system of pleading provided by the Federal Rules"); *see also Agilent Techs., Inc. v. Micromuse, Inc.*, 2004 WL 2346152 *5 (S.D.N.Y. 2004) ("[M]otions pursuant to Rule 12(e) are generally disfavored where prompt resort to discovery may provide an adequate means for ascertaining relevant facts . . . ."); *Lincoln Labs., Inc. v. Savage Labs., Inc.*, 26 F.R.D. 141, 142-43 (D. Del. 1960) ("It is not the function of 12(e) to provide greater particularization of information alleged in the complaint or which presents a proper subject for discovery.").

Here, Esprit US contends that the complaint is vague and ambiguous because: (1) it fails to identify which version and registration of plaintiff's trademark is allegedly being infringed; (2) it fails to sufficiently identify which Esprit stitching designs are at issue; (3) it fails to distinguish between Esprit designs that are allegedly "*de minimus* variations" of prohibited designs from the settlement agreement, and Esprit designs that are otherwise allegedly prohibited by the settlement agreement; and

---

[2] Rule 12(e) states:
A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.
Fed. R. Civ. P. 12(e).

4

1  (4) it fails to identify which Esprit entity is responsible for the particular infringing use in the breach of

2  settlement cause of action.[3]

3  However, the Court finds that the complaint is not unintelligible and does provide defendants

4  with sufficient notice of the allegedly infringing Esprit designs and the trademark allegedly being

5  infringed for Esprit US to form a responsive pleading. *See Lincoln Labs., Inc.*, 26 F.R.D. at 143

6  ("Where the information sought is not necessary to frame a responsive pleading, which might be a

7  general denial or a disclaimer of knowledge of the alleged facts, a 12(e) motion should not be granted.").

8  First, the complaint specifically identifies the Arcuate Stitching Design Trademark as the

9  trademark being infringed, and provides clear examples of its use on plaintiff's jeans. This is the only

10 trademark design allegedly being infringed.[4] Furthermore, the Settlement Agreement provides specific

11 examples of Esprit designs that defendants agreed to discontinue, and of which defendants agreed to not

12 produce "*de minimus* variations." It also provided specific examples of the Esprit designs to which

13 plaintiff had no objection. Accordingly, the Court finds that the complaint provides sufficient notice

14 as to which trademarked design is allegedly being infringed.

15 Second, the complaint provides Esprit US with sufficient notice of which Esprit designs are at

16 issue. The complaint alleges that defendants "ha[ve] in the past and continue[] to manufacture, source,

17 market and/or sell jeans around the world that display designs on the rear pockets that are confusingly

18 similar to LS&CO.'s Arcuate trademark and/or are prohibited by the 2004 Settlement Agreement or are

19 *de minimus* variations of designs prohibited by the 2004 Settlement Agreement." Thus, the complaint

---

[3] Plaintiff has already agreed to provide Esprit US with legible copies of the infringing designs, so the Court will not address this issue.

[4] Esprit US' assertion that it needs to know which version or registration of the trademark has allegedly been infringed is without merit. The Arcuate trademark design is the same for each registration and version of that trademark. The only apparent difference is the jurisdiction in which the Arcuate trademark has been registered. The specific jurisdictions in which the alleged Arcuate trademark infringement has occurred can be determined through discovery.

1 provides Esprit US with notice that it is being sued for infringing designs on the rear pocket of jeans.
2 Furthermore, the complaint specifies in its Exhibit C the specific Esprit designs which allegedly infringe
3 upon the Arcuate Trademark. Exhibit C to the complaint contains twenty high-quality color copies of
4 Esprit rear jean pocket designs. That plaintiff does not limit its complaint to the designs shown in
5 Exhibit C does not render the complaint vague and ambiguous, but leaves plaintiff with the ability to
6 seek a remedy for additional allegedly infringing Esprit designs that may come to light through
7 discovery. Accordingly, the Court finds that the complaint provides sufficient notice of which Esprit
8 stitching designs are at issue. *See Agilent Techs., Inc.*, 2004 WL 2346152 at *5 (noting cases that stand
9 for the proposition "that a pleading need not identify every infringing product where some other limiting
10 parameter has been set forth or at least one purportedly infringing product has been identified"). Any
11 further detail required to determine which Esprit designs are allegedly "*de minimus* variations" of the
12 prohibited Esprit designs listed in the settlement agreement, and which Esprit designs allegedly
13 otherwise violate the settlement agreement and/or the Arcuate Trademark, can be ascertained through
14 discovery. *See CMAX, Inc.*, 290 F.2d at 738.

15 Finally, the cause of action for breach of the settlement agreement provides sufficient notice of
16 which Esprit entity is being sued for what. It specifically alleges that all defendants are jointly and
17 severally liable for the following:

18 breach[ing] the terms of [Esprit's] obligations under the 2004 Settlement Agreement by manufacturing, distributing, marketing and/or selling jeans that display designs on the
19 rear pockets that are attached to the Agreement or are *de minimus* variations of designs attached to the Agreement, and then refusing to meet and confer after having been given
20 notice.

21 Compl. ¶ 53. Thus each Esprit defendant is being sued for every Esprit design that allegedly violates
22 the settlement agreement. Accordingly, the Court finds the complaint sufficiently clear on this point.
23
24 ///

6

**CONCLUSION**

For the foregoing reasons, the Court hereby DENIES defendant's motion for a more definite statement [Docket No. 78].

**IT IS SO ORDERED.**

Dated: March 28, 2008

SUSAN ILLSTON
United States District Judge