IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO., | No. C 07-0910 SI |
| Plaintiff, | **ORDER RE: SUMMARY JUDGMENT MOTIONS and MOTION TO STAY** |
| v. | |
| ESPRIT US DISTRIBUTION LTD., *et al.*, | |
| Defendants. / | |

On October 10, 2008, the Court heard oral argument on the parties' motions for partial summary judgment. In addition, on October 22, 2008, plaintiff filed a motion to place a temporary stay on this proceeding. Pursuant to Civil Local Rule 7-1(b), the Court finds the latter motion appropriate for resolution without oral argument.

Having considered the papers submitted, and for good cause shown, the Court issues the orders set out below.

**BACKGROUND**

On February 13, 2007, Levi Strauss & Co. ("LS&Co.") filed this suit alleging that defendant Esprit US Distribution Ltd. ("Esprit US") infringes LS&Co.'s Arcuate Stitching Design Trademark ("the Arcuate trademark"). On February 7, 2008, LS&Co filed its First Amended Complaint ("FAC"), naming five additional Esprit entities as defendants. (The new defendants are Esprit International, Esprit Wholesale GmbH, Esprit de Corp. France S.A., Esprit Belgie Wholesale N.V., and Esprit Belgie Retail N.V. , collectively "Esprit.") In the FAC, LS&Co. alleged that at least eighteen Esprit additional designs infringe the Arcuate trademark.

Now before the Court are the parties' motions for partial summary judgment. Esprit US and Esprit International claim that LS&Co.'s addition of eighteen designs to the complaint violated the parties' 2004 settlement agreement and request that the Court dismiss the new claims with prejudice. They also contend that they are entitled to partial summary judgment on (1) their affirmative defense that LS&Co. failed to satisfy conditions precedent to filing the FAC, and (2) their counterclaim against LS&Co. for breach of contract. LS&Co. seeks summary judgment on defendants' counterclaim that LS&Co. committed fraud in its filings with the United States Patent and Trademark Office ("PTO").

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir.1991). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**1.    LS&Co. Breached the Notice and Cure Provisions of the Parties' Settlement Agreement**

LS&Co. and Esprit signed a 2004 settlement agreement in 2004. Esprit argues that the agreement requires LS&Co. to give Esprit written notice of alleged infringements of the Arcuate Trademark and to wait ninety days before commencing legal action for infringement. Section 9 of the settlement agreement between LS&Co. and Esprit provides in relevant part:

> In the event the LS Companies [LS&Co.] believe the EDC Companies [Esprit] have violated any provision of this Agreement and/or otherwise violated the LS Companies' rights in the Tab or Arcuate Trademark by manufacturing, distributing, or selling garments in violation of paragraph 3 of this Agreement, they shall give the EDC Companies written notice of the alleged violation and the EDC Companies shall have 90 days from the date of receipt of such notice to cure the alleged breach before the LS Companies commence any legal action or proceeding. The parties shall attempt in good faith to resolve any dispute by mediation under the Commercial Mediation Rules of the American Arbitration Association then in effect. The parties agree that in the event the EDC Companies sell any garments in violation of this agreement an adequate cure shall consist[] of recall of the garments at issue or disgorgement of the EDC Companies' net profits after tax on sales that violate this Agreement, in addition to the EDC Companies' cessation of all activities that violate this Agreement, or such other cure as the parties may agree upon. Provided the EDC Companies timely cure the alleged violation under this provision, the LS Companies shall not commence or reinstitute any legal or equitable action or proceeding for such violation.

Plaintiff's First Amended Complaint, ex. D. Section 10 of the agreement specifies that notice "to the EDC Companies" must be sent to Esprit US in New York with copies to 1) the "Group Legal Advisor" at Esprit de Corp in Hong Kong and 2) Ronald J. Lehrman, Esq. in New York.[1] *Id.* The parties agree that LS&Co. complied with the notice provisions with respect to the initial action against Esprit US. The issue is whether LS&Co. breached the agreement when it filed the FAC alleging additional violations by the foreign Esprit entities.

LS&Co. contends that it was not required to give further notice before filing the FAC because notice was required only before "commenc[ing] any legal action or proceeding." According to LS&Co., the legal action was commenced, after proper notice, on February 13, 2007, and no further notice was required. LS&Co.'s interpretation is at odds with the language of the settlement agreement. Section 9 provides that when LS&Co. discovers an allegedly infringing use of the Arcuate trademark by Esprit,

---

[1] According to LS&Co., Mr. Lehrman was an attorney with the New York law firm that represented Esprit US in the settlement negotiations.

3

1 LS&Co. "shall give the EDC Companies [Esprit] written notice of the alleged violation." LS&Co.
2 claims that it discovered new infringements in November, 2007. The company was therefore required
3 to comply with the notice provisions before commencing legal action to prevent the new alleged
4 infringements. *See Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813, 827 (6th Cir.
5 1978) ("We cannot allow notice of one breach to be carried over to create notice of a subsequent related,
6 but distinct, breach.").

7 LS&Co. argues that if notice was required, it complied substantially with the notice provisions
8 of the settlement agreement. LS&Co.'s counsel sent e-mails to counsel representing Esprit US on
9 November 27, 28, and 29 2007. Decl. of Gia Cincone in Supp. of Plaintiff's Opp. to Def. Mot. for
10 Partial Summ. J. ("Cincone Decl."), exs. D-F. In the November 27 e-mail, counsel for LS&Co. stated
11 that he had discovered "other objectionable designs" on a website owned by an Esprit entity. *Id.*, ex.
12 D. In the November 28 e-mail, LS&Co.'s counsel forwarded images of six allegedly infringing designs
13 labeled "Esprit France." *Id.*, ex F. Counsel for LS&Co. also sent a letter on December 5, 2007 stating
14 that "the additional designs can and should be added to the lawsuit." *Id.*, ex. H. There is a factual
15 dispute as to whether LS&Co.'s communications referenced all of the allegedly infringing designs:
16 while the FAC identified eighteen new products, *see* FAC, exs. C-2 and C-4 through C-20, Esprit
17 contends that the November 28 e-mail did not include images of products C-2, C-19, and C-20.

18 There is no dispute that LS&Co. failed to comply with two other provisions of the settlement
19 agreement's notice requirement. LS&Co. concedes that it waited seventy-two days (instead of the
20 required ninety) after the initial e-mail to Esprit US before filing the FAC. In addition, LS&Co.
21 contacted no Esprit entity other than Esprit US about the new alleged infringements, despite the
22 requirement in the settlement agreement that a "copy" be sent to the Group Legal Advisor at Esprit de
23 Corp in Hong Kong. LS&Co. ignores this provision and maintains that notice to Esprit US was
24 sufficient to constitute notice to all Esprit entities that were bound by the settlement agreement.

25 "The interpretation and construction of a written contract present only questions of law, within
26 the province of the court, and not of the jury, so long as the contract is unambiguous and the intent of
27 the parties can be determined from the agreement's face." Richard Lord, *Williston on Contracts*, § 30:6
28 (4th ed. 1999). The notice provisions of the settlement agreement are unambiguous: LS&Co. was

4

required to give notice to the Group Legal Advisor at the Esprit entity in Hong Kong. LS&Co. did not comply with this provision.

LS&Co. raises several arguments that compliance with the settlement agreement was not required. First, LS&Co. contends that strict compliance was unnecessary because Esprit US had received actual notice and was not prejudiced by the form of notice. The cases cited by LS&Co. do not demonstrate that strict compliance with the notice provision was unnecessary. In *Morse/Diesel, Inc. v. Trinity Industries, Inc.*, 67 F.3d 435, 444 (2d Cir. 1995), the court considered whether the jury should have been instructed on waiver but did not address the validity of the substantial compliance instruction. In *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 925 (2d Cir. 1977), the court noted that its holding on notice requirements was limited to the circumstances of the case. Moreover, LS&Co. does not explain why Esprit was not prejudiced by its failure to allow the full ninety-day period for cure. None of the foreign Esprit entities had notice of the alleged infringements, so they could not have taken steps to avoid litigation. While Esprit US had actual notice of at least some of the infringements, it claims to have been prejudiced because it "[was] not and will never be provided the 90-day non-adversarial window to evaluate LS&Co.'s claims." The Court agrees. LS&Co cannot alter the terms of the parties' settlement agreement by asserting that its own non-compliance did not prejudice Esprit US.

Second, LS&Co. claims that it would have been futile to have provided notice to the foreign Esprit entities or to have waited for the full ninety-day period before filing the FAC. LS&Co. contends that it was therefore not required to perform "a useless act." *See Vineland Homes v. Barish*, 138 Cal. App. 2d 747, 760 (1956). In *Vineland Homes*, the court found that performance was futile because the sellers refused to comply with their contractual obligation to execute escrow instructions. There is no evidence here that Esprit refused to carry out a contractual obligation. LS&Co. argues that Esprit demonstrated its intransigence by failing to indicate that it would cease sales of the allegedly infringing garments, pay damages, or enter mediation. According to the terms of the agreement, however, Esprit was automatically entitled to the full ninety-day cure period. It could not have forfeited that entitlement by failing to manifest sufficient good faith efforts at mediation during the ninety days. In any event, the communications from Esprit do not indicate that it had repudiated its obligation under the settlement

5

agreement to resolve any dispute by mediation.

Third, LS&Co. contends that Esprit may not enforce the notice provision because Esprit has repeatedly ignored and breached that provision. As evidence, LS&Co. cites Esprit's alleged failure to acknowledge or respond to LS&Co.'s communications in 2006. These communications are irrelevant, however, because they predate LS&Co.'s 2007 discovery of the new alleged infringements.

Fourth, LS&Co. claims that Esprit has waived its right to rely on the notice provision by failing to invoke it in a timely manner. According to LS&Co., Esprit should have objected to the form of notice when LS&Co. first contacted it about additional alleged infringements in December of 2007. The European entities, however, could not have objected at that time because they did not receive notice. As for Esprit US, it is disputed as to whether the 2007 communications alleged all of the infringements that were in the FAC. Even if the allegations were complete, Esprit US could not have objected to LS&Co.'s breach of the ninety-day cure requirement before LS&Co. breached it by filing the FAC. While Esprit did not argue the notice issue in its opposition to LS&Co.'s motion for leave to amend its complaint, Esprit did raise this issue in its answer to the FAC. *See* Def. Esprit US Distribution Ltd.'s Answer, Affirmative Defenses and Redacted Counterclaim, Affirmative Defenses ¶ 15 ("LS&Co. has failed to satisfy conditions precedent to brin[g]ing its claims including the failure to provide proper notice and failure to seek resolution through alternative dispute resolution as required by contract."). LS&Co.'s arguments that Esprit waived its right to rely on the notice provision are therefore misplaced.

Finally, LS&Co. maintains that if it breached the settlement agreement, the proper remedy is to dismiss the new infringement claims without prejudice. At oral argument, LS&Co. noted that because Esprit failed to raise its notice counterclaim in its opposition to the FAC, LS&Co. has gone to considerable expense to serve the foreign Esprit entities. In light of the stage of this proceeding at which Esprit has raised this issue, the Court finds that it would be inequitable and inefficient to dismiss the new claims with prejudice.

After oral argument on this matter, LS&Co. filed a motion to stay this case while it complies with the notice and cure provisions of the settlement agreement by giving notice to the foreign Esprit entities and waiting ninety days before commencing legal action. [Docket No. 168] Defendants oppose the motion, arguing that it is a means of circumventing the terms of the settlement agreement. [Docket

6

No. 179] It is not possible to comply with the notice and cure provisions, defendants argue, now that litigation has already begun.

The Court disagrees. As discussed above, the Court will not dismiss the new claims with prejudice. The options are therefore to allow this case to go forward while LS&Co. complies with the settlement agreement with regard to the designs attached to the FAC as exhibits C-2 and C-4 through C-20, or to stay this action while LS&Co. goes through the same procedure. The Court finds that the latter option is more likely to preserve resources and avoid piecemeal litigation. Accordingly, LS&Co.'s motion to stay this case **for ninety days** from the date of this order is GRANTED. Defendants Esprit Wholesale GmbH, Esprit de Corp. France S.A., Esprit Belgie Wholesale N.V., and Esprit Belgie Retail N.V. must answer plaintiff's FAC within **ninety days** of the date of this order.

Esprit also moves for partial summary judgment on its counterclaim against LS&Co. for breach of contract based on LS&Co.'s failure to comply with the notice and cure provisions of the settlement agreement. *See* Def. Answer, Affirm. Def., and Counterclaim to Pl. First Am. Complaint, ¶ 34-37. Although the Court does find that LS&Co. failed to comply with the notice and cure provisions, at this early stage Esprit has not established that there is no triable issues as to whether it "performed each and every act required" by the settlement agreement and that Esprit was damaged by LS&Co.'s breach. Accordingly, Esprit's motion for summary judgment on this counterclaim is DENIED.

In sum, Esprit's motion to dismiss with prejudice LS&Co's FAC with regard to the designs attached to the FAC as exhibits C-2 and C-4 through C-20 is DENIED. Esprit's motion for summary judgment on its counterclaim for breach of contract is DENIED. This decision moots Esprit's motion for summary judgment on its affirmative defense that LS&Co. failed to satisfy conditions precedent to filing the FAC.

**2.    LS&Co. Is Entitled to Summary Judgment on Esprit's Fraud Counterclaim**

    **A.    Disclosure of the Lois Sportswear Proceeding**

LS&Co. seeks summary judgment on Esprit's counterclaim that the Arcuate trademark should be cancelled because LS&Co. committed fraud in 1986 in the process of making the mark incontestable. A registrant may obtain an "incontestable" trademark registration after the registered mark has been in

continuous use for five consecutive years. 15 U.S.C. § 1065. In order to do so, the registrant must file an affidavit with the PTO attesting that, *inter alia*, "there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of . . . " 15 U.S.C. § 1065(2). The "rights" referred to in that provision are the registrant's right to 1) claim ownership of a mark and 2) register the mark or keep it on the register. *See* 15 U.S.C. § 1065(1).

In 1982, Lois Sportswear U.S.A., Inc. ("Lois Sportswear") filed an action in the Southern District of New York for declaratory judgment that the back pocket stitching design on its jeans did not infringe on any LS&Co. trademark. LS&Co. asserted counterclaims that Lois Sportswear infringed its Arcuate trademark. Decl. of Rachel Davidson in Supp. of Def. Opp. to Pl. Mot. for Summ. J. ("Davidson Decl."), ex. B ¶ 37. LS&Co. made two representations to the PTO about the Arcuate trademark while the case against Lois Sportswear was still pending. On May 14, 1985, shortly before summary judgment proceedings, LS&Co.'s vice president and corporate secretary, Katherine Durgan, filed an affidavit with the PTO, as required by § 1065(2), testifying that there was no proceeding involving LS&Co.'s rights to claim ownership of the Arcuate trademark, register the mark, or keep the mark on the register. The PTO rejected the affidavit as untimely.[2] On January 16, 1986, LS&Co.'s assistant corporate secretary, Jean Fowler, submitted a second affidavit, making the same representation. At the time, the case against Lois Sportswear was pending in the U.S. Court of Appeals for the Second Circuit. Esprit contends that in its case against LS&Co., Lois Sportswear attacked the validity of the Arcuate trademark, so LS&Co. knowingly made false statements to the PTO when it represented that no proceeding involving LS&Co.'s right to register the Arcuate trademark was pending.

The PTO has clarified the scope of the disclosure requirement in incontestability affidavits: "The [PTO] does not consider a proceeding involving the mark in which the owner is the plaintiff, where there is no counterclaim involving the owner's rights in the mark, to be a 'proceeding involving these

---

[2] In another case in the Northern District of California, Judge White held on April 16, 2008 that the defendant clothing company had failed to state a claim for cancellation based on the May 1985 affidavit. The court reasoned that because the PTO rejected the affidavit as untimely, the PTO could not have relied on any allegedly false statement in the affidavit. *See Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 548 F. Supp. 2d 811, 813 (N.D. Cal. 2008). Esprit does not appear to base its allegations of fraud on the May 1985 affidavit, other than as evidence of LS&Co.'s intent. Accordingly, the Court will consider only the January 16, 1986 affidavit for purposes of determining whether disclosure was required during the Lois Sportswear proceeding.

8

rights' that would preclude the filing or acknowledgment of a § 15 affidavit." Trademark Manual of Examining Procedure ("TMEP") § 1605.04 (5th ed. 2007). Relying on the TMEP, the Federal Circuit confirmed that a registrant need not disclose a proceeding in which the registrant is the plaintiff and there is no counterclaim challenging the validity of the registration. *See Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322, 1327 (Fed. Cir. 1999). The questions before the Court, therefore, are whether, at the time LS&Co. filed the affidavit with the PTO, LS&Co. stood in the position of the plaintiff, and whether a counterclaim challenging the validity of the registration was pending.

LS&Co. argues that as the defendant in the declaratory relief action brought by Lois Sportswear, LS&Co. had the burden of proof, *see Plumtree Software, Inc. v. Datamize, LLC*, No. 02-5693, 2003 U.S. Dist. LEXIS 26948, at *11 (N.D. Cal. Oct. 6, 2003), and therefore stood in the "substantive position" of the plaintiff. The Court agrees that LS&Co. was in the substantive position of plaintiff in the Lois Sportswear matter. This fact is not dispositive, however, because when LS&Co. filed its counterclaim, Lois Sportswear raised an affirmative defense that Arcuate trademark was no longer sufficiently distinct to serve as a mark. *See* Davidson Decl. ex. D, ¶ 16.

According to Esprit, the affirmative defense raised by Lois Sportswear constituted a counterclaim challenging the validity of the Arcuate trademark, so LS&Co. did not qualify for the exception to disclosure articulated in *Sunrise* and the TMEP. LS&Co.'s response that Lois Sportswear's challenge was an affirmative defense, not a counterclaim, is not convincing. LS&Co. recognizes that had Lois Sportswear prevailed on appeal, it could have sought cancellation of the mark. Pl. Mot. for Summ. J., at 11. It is still not clear, however, that LS&Co. was required to disclose the matter to the PTO. By January 16, 1986, when LS&Co. filed the affidavit with the PTO, LS&Co. had won at the district court and Lois Sportswear's appeal was pending at the Second Circuit. LS&Co. contends that by then, Lois Sportswear had waived any challenge to the Arcuate registration. Nonetheless, Lois Sportswear argued in its petition for rehearing en banc that the back pocket stitching design was not sufficiently distinct to serve as an identifier of source. Davidson Decl., ex. O. at 3. The Court need not resolve whether LS&Co. was required to disclose the litigation with Lois Sportswear to the PTO, however, because Esprit has not established that there is a triable issue of fact as to whether LS&Co. had fraudulent intent when it filed the affidavit.

9

**B.     Evidence of Fraudulent Intent**

When a party asserts a claim for fraud on the PTO, it must prove "a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters*, 918 F.2d 1439, 1444 (9th Cir. 1990) (citations omitted). The party alleging trademark fraud bears a "heavy" burden of proof. *Id.* In order to survive summary judgment, the party alleging fraud must show that there is a genuine issue as to whether the failure to make a disclosure to the PTO was made "in bad faith or with knowledge" that disclosure was required. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 996-97 (9th Cir. 2001). "[F]raud will not lie if it can be proven that the statement, though false, was made with a reasonable and honest belief that it was true." *Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha*, 2006 TTAB LEXIS 9, at *28 (Trademark Trial and Appeal Board June 9, 2005).

Esprit argues that LS&Co.'s failure to investigate before filing the affidavit amounts to reckless disregard for the truth. Jean Fowler, LS&Co.'s assistant corporate secretary, testified that when she signed affidavits for LS&Co., she relied on the attorney who brought them to her and did not carry out her own investigation to verify the accuracy of statements in the affidavits. Esprit maintains that the May, 1985 affidavit filed by LS&Co. by the PTO but rejected as untimely is relevant to show LS&Co.'s pattern of "willful blindness." Katherine Durgin, LS&Co.'s corporate secretary, filed the May, 1985 affidavit and testified that before signing an affidavit, she would only look at the file to make sure that LS&Co.'s lawyers had approved it for her signature.

Esprit cites a Trademark Trial and Appeal Board (TTAB) decision for the proposition that an affiant who does not have personal knowledge of a matter must investigate thoroughly before signing and submitting the statement to the PTO. *See Standard Knitting, Ltd.* 2006 TTAB LEXIS 9, at *36. *Standard Knitting* is distinguishable from this case. In *Standard Knitting*, the affiants relied on the chief operating officer's statement that the marks were in commerce on certain goods. The court found, however, that the chief operating officer's mistakes were unreasonable and that because he had personal knowledge of the company's merchandise, he "could not have honestly believed" the statements in the affidavits. *Id.* at *35-34. In this case, there is no evidence that Fowler and Durgin did not believe or had reason not to believe that the affidavits they signed were accurate. Furthermore, there is no

10

evidence that the LS&Co. attorneys who prepared the affidavits were unreasonable in concluding that they did not have to disclose the Lois Sportswear litigation.

"Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996). Esprit has not demonstrated that there is a triable issue of fact as to whether LS&Co. knew the affidavit was incorrect or whether LS&Co. acted in bad faith. Accordingly, LS&Co.'s motion for summary judgment on this issue is GRANTED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS LS&Co.'s motion for summary judgment on Esprit's fraud counterclaim and GRANTS LS&Co.'s motion to temporarily stay this case. Esprit's motion to dismiss with prejudice claims from LS&Co.'s first amended complaint is DENIED. Esprit's motion for summary judgment on its counterclaim for breach of contract is DENIED without prejudice. This decision moots Esprit's motion for summary judgment on its affirmative defense that LS&Co. failed to satisfy conditions precedent to filing the FAC.

**IT IS SO ORDERED.**

Dated: 11/26/08

SUSAN ILLSTON
United States District Judge

11